**AFFIRM; and Opinion Filed August 4, 2015.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-14-00216-CR

**NATHAN EARL BURGESS, Appellant**
**V.**
**STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 1**
**Collin County, Texas**
**Trial Court Cause No. 001-86625-2012**

## MEMORANDUM OPINION

Before Justice Bridges, Justice Fillmore, and Justice Brown
Opinion by Justice Brown

Appellant Nathan Earl Brown was charged by information with the misdemeanor offense of illegal dumping of litter or other solid waste weighing more than five pounds but less than five hundred pounds. The trial court found appellant guilty as charged and sentenced him to twenty days' confinement in the county jail, probated for nine months. In one issue on appeal, appellant challenges the sufficiency of the evidence to support his conviction. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the trial court's judgment.

## I. BACKGROUND

David Gensler, a code compliance supervisor for the city of Murphy, Texas, testified that on July 12, 2012, he went to a house located at 720 Paint Creek, Murphy, Texas, in response to a complaint regarding items on the public street, public sidewalk, and front yard. As a code

officer, Gensler enforces the city's municipal codes pertaining to high weeds, litter, and things of that nature. When Gensler arrived at the property, he observed that the front yard and driveway were covered with items, including some items Gensler considered to be hazardous. Gensler described seeing furniture, a glass cabinet, CDs, and cassette tapes; he also saw bags of what he believed to be animal and human excrement throughout the property. After talking to appellant, Gensler issued a notice of violation, notifying appellant that he had twenty-four hours within which to remove all the items from the property.

At the request of the Murphy Police Department, Gensler and code compliance officer Tony Scorio went back to the Paint Creek house the following day. Upon arriving at the property, Gensler immediately observed that nothing had been removed from the property, and in fact, there were even more items on the front yard and driveway. Gensler saw a U-Haul truck in front of the property and noticed that a few items had been moved adjacent to the truck. Appellant was sitting in a lawn chair in the front yard and several police officers were talking to him. Gensler could not hear what the officers were saying; however, as Gensler watched Sergeant Hermes talking to appellant, appellant became upset and began grabbing and throwing items around the front yard. Appellant yelled at the police and compliance officers and demanded their names. According to Gensler, appellant threw a box of cassette tapes across the front yard and then picked up a glass cabinet and threw it. The cabinet landed on the sidewalk, shattering glass on the sidewalk and into the street.

Sergeant James Lee Hermes, a police officer with the Murphy Police Department, testified that on July 13, 2012, he and several other officers—Officer Michael Palko, Officer Joseph Wetzel, and Officer Chris Riebschlager—were sent to 720 Paint Creek, Murphy, Texas. When he arrived at the property, Hermes saw several individuals in the front yard. Appellant was sitting in a lawn chair; appellant's sons and friends were standing nearby. Hermes also

observed furniture, boxes, and debris in the front yard, the sidewalk, and the roadway. Hermes informed appellant that his items needed to be removed immediately because they were obstructing a public sidewalk and roadway. Appellant told Hermes to just give him a citation, but Hermes explained that the offense was a class B misdemeanor and not an offense for which a citation could issue. Hermes stated that appellant became very upset and started yelling, cursing, and threatening all of the city officials and officers.

According to Hermes, appellant was making so much noise that neighbors began coming outside to see what was happening. While voicing his frustration, appellant began picking up furniture that was on the sidewalk and throwing it across the yard. Appellant told his sons to start collecting everything so his sons started throwing items into the U-Haul truck. Appellant then pushed over a large glass and metal cabinet, shattering glass across the sidewalk and into the road. At that point, Hermes instructed one of his officers to arrest appellant for disorderly conduct and illegal dumping. Public Works was called to the property to clean the sidewalk and street where the glass had been broken.

Appellant testified that all of the items on the front yard, sidewalk, and street were placed there by the constable and employees from the constable's office when they evicted his sons from the house at 720 Paint Creek. On cross-examination, appellant admitted living at the house with his sons, but claimed the items on the front yard belonged to his sons and not to him. Appellant admitted that on July 12, 2012, he received the notice to clear the yard and sidewalk within twenty-four hours. According to appellant, he immediately complied with Hermes' request to remove his sons' personal property from the sidewalk and street. Appellant testified he did not knowingly or intentionally dump or dispose of any litter or trash. He stated he did not expect the glass cabinet to break when it fell over, but admitted he did not help clean up the broken glass.

After a bench trial, the trial court found appellant guilty of the misdemeanor offense of illegal dumping of more than five pounds but less than five hundred pounds of litter or other solid waste at a place that is not an approved solid waste site.  This appeal followed.[1]

## II.  APPLICABLE LAW

In his sole issue on appeal, appellant argues the evidence was legally insufficient to support his conviction for illegal dumping of litter or other solid waste weighing more than five pounds but less than five hundred pounds.

### A.  Standard of Review

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Acosta v. State*, 429 S.W.3d 621, 624 (Tex. Crim. App. 2014). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Acosta*, 429 S.W.3d at 624–25.  We must defer to the jury's credibility and weight determinations because the jury is the exclusive judge of the witnesses' credibility and the weight to be given to their testimony.  *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

### B.  Illegal Dumping

A person commits the offense of illegal dumping if he "disposes or allows or permits the disposal of litter or other solid waste at a place that is not an approved solid waste site, including a place on or within 300 feet of a public highway, on a right-of-way, on other public or private property, or into inland or coastal water of the state."  TEX. HEALTH & SAFETY CODE ANN.

---

[1] Appellant's first appeal was dismissed for want of jurisdiction because his notice of appeal was untimely.  *See Burgess v. State*, No. 05-13-01244-CR, 2013 WL 5828002, at *2 (Tex. App.—Dallas Oct. 29, 2013, no pet.) (mem. op., not designated for publication).  Appellant filed an application for writ of habeas corpus challenging the conviction for which community supervision was imposed, claiming he was deprived of his right to file a motion for new trial and appeal through no fault of his own.  *See* TEX. CODE CRIM. P. ANN. art. 11.072, § 2(b)(1) (West Supp. 2014).  On January 21, 2014, the trial court signed an order granting appellant's application for writ of habeas corpus and granting appellant thirty days within which to file a motion for new trial or a notice of appeal.  On February 20, 2014, appellant filed a motion for new trial and a notice of appeal.

§ 365.012(a) (West Supp. 2014). The offense is a Class B misdemeanor if the litter or other solid waste weighs more than five pounds but less than five hundred pounds. *Id*. § 365.012(e). The terms "dispose" and "dump" mean to discharge, deposit, inject, spill, leak, or place litter on or into land or water. TEX. HEALTH & SAFETY CODE ANN. § 365.011(5) (West 2010). The statute defines "litter" to mean decayable waste and nondecayable solid waste that includes, among other things, glass and metal furniture. *See id*. § 365.011(6).

### III. DISCUSSION

Appellant contends the evidence does not support his conviction for illegal dumping because State did not prove: (1) the items on the front yard, sidewalk, and road were litter or solid waste; (2) appellant placed the litter on the front yard, sidewalk, and road; and (3) appellant had a possessory interest in the land in order to charge him with allowing litter to accumulate on his land. The State refutes appellant's contentions and asserts that regardless of who initially placed the items on the front yard, the evidence clearly shows that appellant threw items around the property, covering the sidewalk and street with broken glass.

Appellant argues he should not have been convicted for illegal dumping because the items on the front yard, sidewalk, and street were not litter or solid waste. Appellant refers to the statutory definition of "litter" in section 365.011(6) and acknowledges that the definition of "litter" includes nondecayable solid waste such as furniture. *See id*. With respect to the definition of "solid waste," appellant notes that "solid waste" has the meaning assigned by section 361.003. *See id*. § 365.011(9). Appellant asserts that "none of that definition includes the items on front lawn where Appellant was arrested by the police." However, appellant does not provide citation to authorities or discussion in support of his assertion.

According to section 361.003(34), "solid waste" means, among other things, rubbish which consists of:

(A) combustible waste materials, including paper, rags, cartons, wood, excelsior, furniture, rubber, plastics, yard trimmings, leaves, and similar materials; and

(B) noncombustible waste materials, including glass, crockery, tin cans, aluminum cans, metal furniture, and similar materials that do not burn at ordinary incinerator temperatures (1,600 to 1,800 Fahrenheit).

TEX. HEALTH & SAFETY CODE ANN. § 361.003(31), (34) (West 2010). Gensler testified that the items on the front yard, sidewalk, and street included furniture, cartons, plastics, and a glass and metal cabinet. Gensler identified photographs taken by police officers that clearly show such items covering the front yard, sidewalk, driveway, and street. The photographs, which were admitted into evidence during trial, show large piles of furniture, pillows, bedding, boxes, and many other items. Hermes also observed furniture, boxes, and debris in the front yard, the sidewalk, and the roadway. Based on the record, we conclude the evidence was sufficient to establish that there were items covering the front yard, sidewalk, and street that fell within the statutory definitions of "litter" and "solid waste." *Id*.

Appellant argues he should not have been convicted for illegal dumping because he did not place the items on the front yard, sidewalk, and street. He contends the items were placed on the front yard, sidewalk, and street by the constable and employees from the constable's office when they evicted his sons from the house at 720 Paint Creek. However, Gensler testified that between the time he issued the notice of violation and the time he returned to the property the following day, even more items had been placed on the front yard and driveway. Further, appellant was observed by code compliance officers and police officers as he picked up items and threw them around the property. Both Gensler and Hermes testified that appellant threw or shoved a glass and metal cabinet, causing it to fall over and shatter glass over the sidewalk and street. They also testified that appellant did nothing to remove items from the property and did nothing to clean up the broken glass. And both Gensler and Hermes estimated the weight of the glass cabinet to be more than five pounds and less than five hundred pounds. Based on the

record, we conclude the evidence was sufficient to establish that appellant disposed of more than five pounds but less than five hundred pounds of litter or solid waste on the public sidewalk and the public street. *See* TEX. HEALTH & SAFETY CODE ANN. § 365.012(a), (e).

Finally, appellant argues that even if the items were litter or solid waste, he should not have been convicted for illegal dumping because there was no evidence that he had a possessory interest in the land in order to charge him with allowing litter to accumulate on his land. Citing section 365.012(l), appellant argues that because the State did not prove he owned the property, he could not be charged with allowing or permitting the disposal of litter or other solid waste on the front yard of the property. *See* TEX. HEALTH & SAFETY CODE ANN. § 365.012(l). However, appellant was not charged with allowing litter to accumulate on his own land, and the statute does not require that the person own the land where litter and solid waste is illegally dumped. *See Simmons v. State,* 288 S.W.3d 72, 76 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (appellant detained for illegal dumping was littering pieces of paper on the street); *Mellen v. State*, No. 11-11-00257-CR, 2013 WL 5520369, at *1 (Tex. App.—Eastland Sept. 26, 2013, pet. ref'd) (mem. op., not designated for publication) (appellant convicted of illegal dumping on private property across the alley from his home); *Shagroun v. State*, No. 01-00-00130-CR, 2002 WL 1164147, at *1 (Tex. App.—Houston [1st Dist.] May 30, 2002, pet. ref'd) (not designated for publication) (appellant convicted of illegal dumping on property of a commercial business).

If appellant had owned the property at 720 Paint Creek, section 365.012(l) might have provided appellant with a potential defense for the items disposed on the property. Section 365.012(l) states:

> This section does not apply to an individual's disposal of litter or other solid waste if:
>
> (1) the litter or waste is generated on land the individual owns;
> (2) the litter or waste is not generated as a result of an activity related to a commercial purpose;

–7–

(3) the disposal occurs on land the individual owns; and

(4) the disposal is not for a commercial purpose.

TEX. HEALTH & SAFETY CODE ANN. § 365.012(l). However, appellant argues that he does not own or have any possessory interest in the property. Accordingly, we conclude the section 365.012(l) exclusion does not apply, and the illegal dumping statute applies to appellant. Based on the record, we conclude the evidence was sufficient to establish that appellant disposed of litter and solid waste on private property he did not own, and on the public sidewalk and the public street.

In conclusion, the evidence was legally insufficient to support appellant's conviction for illegal dumping of litter or other solid waste weighing more than five pounds but less than five hundred pounds. We overrule appellant's sole issue.

## IV. CONCLUSION

Having overruled appellant's sole issue, we affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

140216F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NATHAN EARL BURGESS, Appellant

No. 05-14-00216-CR          V.

STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 1, Collin County, Texas
Trial Court Cause No. 001-86625-2012.
Opinion delivered by Justice Brown. Justices Bridges and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 4th day of August, 2015.